## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

COLD STAR SALES AND LEASING, INC.,

Plaintiff/Counterclaim Defendant,

v.

TRU ASEPTICS, LLC AND JOHN DOES 1-10,

Defendants/Counterclaim Plaintiffs

Civil Action No.: 1:19-cv-14030-NLH-AMD

**DEFENDANT TRU ASEPTICS, LLC'S ANSWER TO AMENDED COMPLAINT, DEFENSES, DEMAND FOR JURY TRIAL, AND COUNTERCLAIM**

## ANSWER TO AMENDED COMPLAINT

Defendant TRU Aseptics, LLC ("TRU Aseptics") by and through its attorneys, by way of the Answer to the Amended Complaint filed by Plaintiff Cold Star Sales and Leasing, Inc. ("Plaintiff"), states as follows:

## PARTIES

1.      Upon information and belief, TRU Aseptics admits the allegations in this paragraph.

2.      TRU Aseptics admits that it is a Wisconsin-registered entity, however its principal place of business is located at 2924 Wyetta Drive, Beloit, Wisconsin 53511.

## PROCEDURAL HISTORY

3.      TRU Aseptics admits the allegations in this paragraph.

4.      TRU Aseptics admits the allegations in this paragraph.

5.      TRU Aseptics admits the allegations in this paragraph.

6.      TRU Aseptics admits the allegations in this paragraph.

7. TRU Aseptics admits the allegations in this paragraph.

8. TRU Aseptics admits the allegations in this paragraph.

9. TRU Aseptics admits the allegations in this paragraph.

10. TRU Aseptics admits the allegations in this paragraph.

11. TRU Aseptics admits the allegations in this paragraph.

12. TRU Aseptics admits the allegations in this paragraph.

13. TRU Aseptics admits the allegations in this paragraph.

14. TRU Aseptics admits the allegations in this paragraph.

15. TRU Aseptics admits the allegations in this paragraph.

16. TRU Aseptics admits that Plaintiff is a supplier of certain dairy products but lacks knowledge or information as to all of the dairy products identified, and therefore leaves Plaintiff to its proofs.

17. TRU Aseptics admits the allegations in this paragraph.

18. TRU Aseptics admits that paragraph 18 generally describes the concept of aseptic processing.

19. TRU Aseptics admits that it processed aseptic dairy products at the request of and according to the instructions of Plaintiff. TRU Aseptics denies the remaining allegations contained in Paragraph 19.

20. TRU Aseptics admits that it processed aseptic dairy products at the request of and according to the instructions of Plaintiff. TRU Aseptics denies the remaining allegations in Paragraph 20.

21. TRU Aseptics denies the allegations contained in Paragraph 21.

22.     TRU Aseptics denies that Plaintiff entered into the Tolling Agreement based upon representations as alleged by Plaintiff, and denies that the written agreement reflects all of the terms and conditions of the agreement between the parties.  TRU Aseptics denies the remaining allegations contained in paragraph 22.

23.     TRU Aseptics denies that Plaintiff entered into the Tolling Agreement based upon representations as alleged by Plaintiff.  TRU Aseptics admits that Cold Star executed the Tolling Agreement on or about March 26, 2018 but denies the written agreement reflects all of the terms and conditions of the agreement between the parties.  TRU Aseptics denies the remaining allegations in this paragraph.

24.     TRU Aseptics admits that aseptic processing agreements are sometimes referred to as tolling agreements but denies that the Tolling Agreement reflects all of the terms and conditions of the agreement between the parties. TRU Aseptics denies the remaining allegations in this paragraph.

25.     TRU Aseptics admits that Plaintiff engaged TRU Aseptics for aseptic processing services but denies that the Tolling Agreement reflects all of the terms and conditions of the agreement between the parties. By way of further answer, pursuant to the terms and conditions of the agreement between the parties, Plaintiff determined the formulation, specifications, shelf life, and quality incubation hold period for its products, directed the aseptic processing practices for its products, directed the use of particular ingredients and packaging including both a bag manufactured by Rapak, LLC ("Rapak")[1] and a dispensing tap ("fitment") manufactured by International Dispensing Corporation ("IDC"), which Plaintiff represented was fit and suitable for

[1] Upon information and belief, Rapak, LLC was formerly known as Parish Manufacturing, Inc.  In 2017, DS Smith Plc acquired Parish Manufacturing, Inc.  Rapak, LLC was a wholly owned subsidiary of DS Smith Plc.  Liquibox, Corp., a portfolio company of Olympus Partners, which is a private equity firm acquired DS Smith Plc's plastics division, including Rapak, LLC, in March 2020.  TriMas has since acquired Rapak, LLC.

use by TRU Aseptics to process and package Plaintiff's products, and Plaintiff trained TRU Aseptics' employees on the processes and practices required by the specifications provided by Plaintiff, all of which TRU Aseptics relied upon to process and ship the finished products.

26.     TRU Aseptics denies the allegations in this paragraph as set forth because the reference to the Tolling Agreement is incomplete and inaccurate.

27.     TRU Aseptics admits that the Tolling Agreement includes this statement, but denies that this is a complete and accurate recitation of the terms and conditions of the agreement between the parties.

28.     TRU Aseptics admits that the Tolling Agreement includes this statement, but denies that this is a complete and accurate recitation of the terms and conditions of the agreement between the parties, and denies the validity or applicability of any warranty to the extent given by TRU Aseptics or recited in the Tolling Agreement.

29.     TRU Aseptics denies the allegations in this paragraph.

30.     TRU Aseptics denies the allegations in this paragraph.

31.     TRU Aseptics denies the allegations in this paragraph.

32.     TRU Aseptics admits that Plaintiff entered into the Tolling Agreement with TRU Aseptics on or about March 26, 2018, but denies that the Tolling Agreement reflects all of the terms and conditions of the agreement between the parties, or that Plaintiff entered into the agreement based upon representations as alleged by Plaintiff.  TRU Aseptics denies the remaining allegations in this paragraph.

33.     TRU Aseptics admits that it followed the specifications determined and specified by Plaintiff to process dairy products and that to the extent the process was incomplete, unsuitable,

inaccurate, or defective, it is Plaintiff's fault. TRU Aseptics denies the remaining allegations in this paragraph.

34. TRU Aseptics denies the allegations in this paragraph.

35. TRU Aseptics admits the allegations in this paragraph to the extent that TRU processed approximately 20,000 bags of Cold Star product for Plaintiff as instructed by Plaintiff. By way of further answer, the approximately 20,000 bags of Cold Star product that TRU Aseptics processed for Plaintiff were in fact FDA-quality and as the customer specified, and to the extent they were not, it was caused by Plaintiff's incomplete, inaccurate, unsuitable, and defective specifications.

36. TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore leaves Plaintiff to its proofs.

37. TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore leaves Plaintiff to its proofs. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

38. TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore leaves Plaintiff to its proofs. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

39. TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics lacks knowledge and information

sufficient to form a belief as to the truth of the allegations in this paragraph and therefore leaves Plaintiff to its proofs. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

40. TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

41. TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore leaves Plaintiff to its proofs. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

42. TRU Aseptics denies the allegations in this paragraph.

43. TRU Aseptics denies the allegations in this paragraph.

44. TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

45. TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects in the products complained of by Plaintiff.

46. TRU Aseptics denies the allegations in this paragraph.

47. TRU Aseptics denies the allegations in this paragraph.

48. TRU Aseptics denies the allegations in this paragraph.

49. TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore leaves Plaintiff to its proofs. TRU Aseptics

denies that it caused any defects in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

50.     TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph related to the cost of replacement aseptic dairy products and denies the remaining allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

51.     TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics denies the allegation that it shipped defective aseptic dairy products to Plaintiff.  TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore leaves Plaintiff to its proofs. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

52.     TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics denies the allegation that it shipped defective aseptic dairy products to Plaintiff.  TRU Aseptics lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore leaves Plaintiff to its proofs.  TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

53. TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

54. TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

55. TRU Aseptics admits the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

56. TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

57. TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

58. TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

**COUNT I**
**Breach of Contract**

59.     TRU Aseptics repeats and incorporates herein each and every response to the foregoing allegations.

60.     TRU Aseptics makes no response to this paragraph as it calls for a legal conclusion. To the extent a response is required, it is denied.

61.     TRU Aseptics denies the allegations in this paragraph.

62.     TRU Aseptics denies the allegations in this paragraph.

63.     TRU Aseptics denies the allegations in this paragraph.

64.     TRU Aseptics denies the allegations in this paragraph.

65.     TRU Aseptics denies the allegations in this paragraph.

66.     TRU Aseptics denies the allegations in this paragraph.

67.     TRU Aseptics denies the allegations in this paragraph.

68.     TRU Aseptics denies the allegations in this paragraph. TRU Aseptics denies that it caused any defects or contamination in the products complained of by Plaintiff, or that TRU Aseptics was the cause of any damages complained of by Plaintiff.

**COUNT II**
**Violation of New Jersey Consumer Fraud Act**

69.     TRU Aseptics repeats and incorporates herein each and every response to the foregoing allegations.

70.     TRU Aseptics denies the allegations in this paragraph.

    a.     TRU Aseptics denies the allegations in this paragraph.

    b.     TRU Aseptics denies the allegations in this paragraph.

    c.     TRU Aseptics denies the allegations in this paragraph.

d.  TRU Aseptics denies the allegations in this paragraph.

e.  TRU Aseptics denies the allegations in this paragraph.

f.  TRU Aseptics denies the allegations in this paragraph.

g.  TRU Aseptics denies the allegations in this paragraph.

h.  TRU Aseptics denies the allegations in this paragraph.

i.  TRU Aseptics denies the allegations in this paragraph.

j.  TRU Aseptics denies the allegations in this paragraph.

71. TRU Aseptics makes no responsive pleading to this paragraph as it calls for a legal conclusion. To the extent a responsive pleading is required, TRU Aseptics denies the allegations in this paragraph.

72. TRU Aseptics denies the allegations in this paragraph.

## DEFENSES

Defendant TRU Aseptics asserts the following defenses, without assuming the burden of proof with respect to any issues as to which applicable law places the burden of proof on Plaintiff. Defendant expressly reserves the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

### First Separate Defense

The Amended Complaint, and each and every claim stated therein, fails to state a claim upon which relief can be granted.

### Second Separate Defense

The Amended Complaint fails, in whole or in part, because the claims contained therein are barred by the doctrine of waiver.

### Third Separate Defense

The Amended Complaint fails, in whole or in part, because the claims contained therein are barred by the doctrine of estoppel.

### Fourth Separate Defense

The Amended Complaint fails, in whole or in part, because the claims contained therein are barred by the doctrine of laches.

### Fifth Separate Defense

The Amended Complaint and all claims for relief therein fail, in whole or in part, because Plaintiff failed to join indispensable parties necessary for the Court to accord complete relief among the existing parties. These indispensable parties include, but are not limited to, Rapak, LLC and International Dispensing Corporation.

### Sixth Separate Defense

The Amended Complaint fails, in whole or in part, because the claims contained therein are barred by the doctrine of avoidable consequence.

### Seventh Separate Defense

Defendant is not liable because it did not make any misrepresentations or omissions and is not responsible (in law or in fact) for any alleged misrepresentations or omissions by others.

### Eighth Separate Defense

The Amended Complaint, and each and every claim stated therein, fails because to the extent that Plaintiff incurred any injury or damages, any such injury or damages was caused by the acts, conduct, or omissions of individuals and/or entities other than Defendant TRU Aseptics, including Plaintiff, as such, any recovery herein should be precluded or diminished in proportion

to the amount of fault attributable to such other individuals and/or entities, under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and/or comparative fault.

## Ninth Separate Defense

The Amended Complaint fails, in whole or in part, because Plaintiff breached the terms of the agreement between the Parties.

## Tenth Separate Defense

The Amended Complaint fails, in whole or in part, because Plaintiff failed to make reasonable efforts to mitigate its damages and injury.

## Eleventh Separate Defense

The Amended Complaint fails, in whole or in part, because Plaintiff acted in bad faith.

## Twelfth Separate Defense

Plaintiff is precluded from recovering attorneys' fees and other out-of-pocket costs from TRU Aseptics under applicable provisions of law.

## Thirteenth Separate Defense

The Amended Complaint fails, in whole or in part, because Plaintiff did not rely upon any alleged representations of Defendant TRU Aseptics.

## Fourteenth Separate Defense

The Amended Complaint fails, in whole or in part, because any damages suffered by Plaintiff were not proximately caused by Defendant TRU Aseptics.

## Fifteenth Separate Defense

The Amended Complaint fails, in whole or in part, because any damages suffered by Plaintiff were the direct and proximate result of Plaintiff's own actions or omissions.

## Sixteenth Separate Defense

The Amended Complaint fails, in whole or in part, because any damages suffered by Plaintiff were the direct and proximate result of an intervening or superseding cause.

## Seventeenth Separate Defense

The Amended Complaint fails, in whole or in part, because Plaintiff's alleged damages were caused solely, particularly, or proximately by the actions or omissions of other persons or entities other than Defendant TRU Aseptics over whom and which Defendant TRU Aseptics has no control.

## Eighteenth Separate Defense

The Amended Complaint fails, in whole or in part, because Defendant TRU Aseptics performed all obligations and duties owed to Plaintiff.

## Nineteenth Separate Defense

The Amended Complaint fails, in whole or in part, because the claims contained therein are barred by the doctrine of unclean hands.

## Twentieth Separate Defense

The Amended Complaint fails, in whole or in part, because Defendant TRU Aseptics' performance of the Tolling Agreement was made impossible, through no fault of the Defendant, and the impossibility was due to events unforeseeable by both Plaintiff and Defendant.

## Twenty-First Separate Defense

The Amended Complaint fails, in whole or in part, because Plaintiff fraudulently induced TRU Aseptics to enter into the Tolling Agreement.

<h3 align="center"><strong><u>Twenty-Second Separate Defense</u></strong></h3>

Plaintiff's claims are barred by their own contributory negligence in accordance with the New Jersey Tortfeasors Contribution Act, <u>N.J.S.A.</u> § 2A:53a-1, *et seq.* or the corresponding Wisconsin Statute.

<h3 align="center"><strong><u>Twenty-Third Separate Defense</u></strong></h3>

The negligence of Plaintiff was greater than any alleged negligence of Defendant and, therefore, any recovery is barred or diminished in accordance with the New Jersey Comparative Negligence Act, <u>N.J.S.A.</u> § 2A:15-5.1, *et seq.* or the corresponding Wisconsin Statute.

<h3 align="center"><strong><u>Twenty-Fourth Separate Defense</u></strong></h3>

Plaintiff's claims for damages are set off by the damages Plaintiff's actions have caused Defendant.

<h3 align="center"><strong><u>Twenty-Fifth Separate Defense</u></strong></h3>

Plaintiff's claims for damages are barred because the warranty relied upon by Plaintiff is *void ab initio* in that Plaintiff had a duty to provide complete, accurate, and suitable specifications that had been tested and shown to be suitable for their purpose before requiring TRU Aseptics to comply with those specifications, but Plaintiff failed to meet this duty.

<h3 align="center"><strong><u>Twenty-Sixth Separate Defense</u></strong></h3>

Defendant cannot be liable for damages for actions taken in good faith by Defendant to mitigate the damages caused by Cold Star's incomplete, inaccurate, unsuitable, and defective specifications.

<h3 align="center"><strong><u>Twenty-Seventh Separate Defense</u></strong></h3>

Plaintiff's claims for damages are barred because Plaintiff had a covenant, agreement, and duty to provide complete, accurate, suitable, and non-defective specifications that had been tested

14

and shown to be fit for Cold Star's purposes before requiring TRU Aseptics to comply with those specifications, and Plaintiff failed to meet this obligation.

**Twenty-Eighth Separate Defense**

Plaintiff has failed to state a claim under the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> § 56:8-2 because Defendant did not sell merchandise to Plaintiff but merely processed Plaintiff's products, among other reasons.

**PRAYER FOR RELIEF**

**WHEREFORE**, Defendant TRU Aseptics respectfully requests that the Court: (i) deny all relief sought by Plaintiff; (ii) dismiss Plaintiff's Amended Complaint in its entirety with prejudice or, alternatively, enter judgement in favor of Defendant; (iii) award Defendant counsel fees, and costs; and (iv) grant Defendant any such other and further equitable and legal relief as the Court deems just and proper.

**COUNTERCLAIM**

Defendant/Counterclaimant Plaintiff TRU Aseptics, by way of Counterclaim against Plaintiff Cold Star Sales and Leasing, Inc. ("Cold Star"), alleges as follows:

**FACTS COMMON TO ALL COUNTS**

73. For nearly 30 years, Cold Star has been in the business of building, selling, and leasing bulk liquid dispensing systems and product for use in their proprietary dispensing systems to the food service industry.

74. At all relevant times, TRU Aseptics was a contract processor and packager ("co-packer") of shelf-stable food and beverage products for entities like Cold Star that sell such products to the food industry.

75. TRU Aseptics purchased its processing plant in Beloit, Wisconsin in or around December 2016 with the intention of performing high-acid aseptic processing.

76. Aseptic processing is a technique wherein thermally sterilized liquid products are packaged into sterilized containers under sterile conditions to process shelf-stable products that do not require refrigeration.

77. Consistent with its intent, TRU Aseptics designed its processing plant to perform high-acid aseptic processing instead of the more complex process involved in low-acid processing.

78. In or around June 2017, TRU Aseptics began communicating with Cold Star about a possible business relationship.

79. At that time, Cold Star needed to engage a new co-packer to for its low-acid aseptic products as soon as possible to meet customer demands because its former co-packer refused to continue as its co-packer processing Cold Star's products.

80. From its initial contact with Cold Star, TRU Aseptics was transparent about the fact that it was a start-up company in its infancy stages and was currently only designed to process high-acid aseptic products.

81. Cold Star assured TRU Aseptics that Cold Star had developed complete, accurate and suitable specifications for TRU Aseptics to follow in processing Cold Star's products, and that it would assist TRU Aseptics in mastering the low-acid aseptic process if TRU Aseptics would invest in the equipment necessary to process Cold Star's products.

82. Cold Star met with TRU Aseptics to discuss a potential business relationship whereby TRU Aseptics would acquire the necessary equipment and alter its plant to process Cold Star's products.

83. On or about June 2017, Cold Star toured TRU Aseptics' plant in Beloit, Wisconsin that was designed to process high-acid aseptic products.

84. During this tour, Cold Star observed that TRU Aseptics would need to make substantial changes to its plant including significant investments in different equipment to process Cold Star's low-acid aseptic products.

85. Based upon its first-hand observations, and its superior knowledge of the low-acid aseptic process, Cold Star advised TRU Aseptics that TRU Aseptics would need to purchase a homogenizer, liquifier, and dairy testing equipment before TRU Aseptics could do a test run to evaluate its ability to process Cold Star's products in accordance with Cold Star's specifications.

86. To induce TRU Aseptics to invest in new equipment and agree to process Cold Star's product, Cold Star arranged training for TRU Aseptics' Director of Manufacturing in New York on or about March 9, 2018, to learn from Byrne Dairy, the co-packer of Cold Star's refrigerated products, how to blend Cold Star's products using a homogenizer, testing equipment, and liquifier.

87. Cold Star representatives along with TRU Aseptics' Director of Manufacturing visited Byrne Dairy on March 9, 2018, but TRU Aseptics did not receive the training and instruction that Cold Star promised it would.

88. Between June 2017 and March 2018, Cold Star and TRU Aseptics continued to exchange communications regarding a potential business relationship with TRU Aseptics as a co-packer for Cold Star.

89. From the parties' initial meeting, Cold Star made it clear that Cold Star as the owner of the product would provide complete, accurate, and suitable specifications that TRU Aseptic

17

would be required to follow, including the use of a 5-liter bag provided by Rapak and the IDC fitment to process and package Cold Star's products.

90. In or around January 2018, Cold Star arranged for a shipment of Rapak 5-liter bags with IDC fitments to TRU Aseptics in preparation for a test run of Cold Star's products.

91. On or about January 17, 2018, Cold Star visited TRU Aseptics' facility to observe the initial trial run of Cold Star's half & half.

92. During the trial run, Cold Star witnessed numerous issues with the Rapak bags and IDC fitments, including that they were defective and contained partially unperforated and completely unperforated bags, which caused damage to TRU Aseptics' filler and caused the filler to stop resulting in substantial downtime.

93. On or about January 18, 2018, TRU Aseptics informed Rapak that TRU Aseptics had experienced numerous issues with the Rapak bags while performing Cold Star's trial run. Rapak responded that they were working on resolving the issue directly with Cold Star.

94. After the disastrous trial run, Cold Star promised TRU Aseptics that it would address and correct the issues with the Rapak bags, which would solve the issues experienced in the trial run.

95. Cold Star represented that IDC would provide the IDC fitments to Rapak, and that Rapak would install the IDC fitments onto Rapak's 5-liter bags with a hermetic seal, which would then be supplied to TRU Aseptics for filling in accordance with Cold Star's specifications.

96. Cold Star represented that the Rapak bags with IDC fitments would maintain the integrity of Cold Star's product, knowing that these statements were false, or without knowledge as to whether they were true, at the time they were made.

97. At no time did Cold Star advise TRU Aseptic that it had never before used the combination of the Rapak bags and the IDC fitment for processing and packaging its low-acid aseptic dairy products.

98. At no time did Cold Star advise TRU Aseptic that it had not tested the combination of the Rapak bags and the IDC fitment for packaging its low-acid aseptic dairy products.

99. At no time did Cold Star advise TRU Aseptic that it did not have complete, accurate, and suitable specifications for formulation, blending, and packaging its products.

100. Cold Star withheld this material information from TRU Aseptics intentionally and with the intent that TRU Aseptic would agree to process Cold Star's products as quickly as possible.

101. In furtherance of its fraud, Cold Star repeatedly represented to TRU Aseptics that the combination of the Rapak bag and IDC fitment had been used for low-acid aseptic processing previously at a plant in Penn Yann, New York, without any issues or concerns, knowing that these statements were false, or without knowledge as to whether they were true, at the time they were made.

102. Cold Star made these false statements so that TRU Aseptics would believe that Cold Star had tested and confirmed the accuracy, completeness, and reliability of its specifications including the formulation, processing, and packaging of its products, which included the Rapak bag and IDC fitment for use at TRU Aseptics' Beloit facility.

103. Cold Star withheld material information from TRU Aseptics including that Cold Star did not have complete, accurate, and suitable specifications, that it had never before used the combination of the Rapak bag and IDC fitment, and that it had not tested the viability of this combination for processing and packaging its low-acid aseptic dairy products.

104. Cold Star provided these false statements, and omitted these material facts, for the express purpose of inducing TRU Aseptics to enter into an agreement to become Cold Star's co-packer. TRU Aseptics relied on Cold Star's representations not only because Cold Star had the contractual relationship with Rapak and IDC, but also because Cold Star retained full responsibility for the accuracy, completeness, and reliability of the specifications for processing its products, and the resulting quality of such products.

105. TRU Aseptics had no reason to know or discover that Cold Star did not have complete, accurate, and suitable specifications, that it had never before used the combination of the Rapak bag and IDC fitment, and that it had not tested the viability of this combination for processing and packaging its low-acid aseptic dairy products before requiring TRU Aseptics to use them.

106. In reliance on the express representations made by Cold Star, and the omission of critical information to the business relationship described above, on or about March 26, 2018, TRU Aseptics entered into an agreement with Cold Star comprised of a written letter of agreement and additional terms and conditions described further herein governing the parties' contractual relationship (the "Tolling Agreement"), whereby TRU Aseptics agreed to process Cold Star's products, specifically 2% milk, half & half, French Vanilla, French iced coffee, and mocha latte, in accordance with FDA-filed low-acid aseptic process schedules and Cold Star's written specifications.

107. Pursuant to the Tolling Agreement, Cold Star retained exclusive responsibility for purchasing, supplying, and arranging for the delivery to TRU Aseptics of ingredients, packaging, and other materials used to process Cold Star's product.

108. In contrast, TRU Aseptics was responsible for coordinating the delivery and shipment of the supplies sourced by Cold Star to TRU Aseptics' Beloit facility.

109. The Tolling Agreement provided that Cold Star retained ownership of all materials used by TRU Aseptics, and that TRU Aseptics merely processed and packaged the products according to Cold Star's specifications.

110. The Tolling Agreement specifically directed that TRU Aseptics must use the Rapak 5-liter bag, IDC fitment, and corrugated box to process Cold Star's product.

111. After TRU Aseptics processed the Cold-Star-supplied materials and created an end product according to Cold Star's specifications, Cold Star took possession of the dairy products.

112. Once Cold Star took possession of the dairy products, TRU Aseptics had no further involvement with Cold Star's products.

113. The Tolling Agreement dictated that Cold Star controlled every aspect of TRU Aseptics' process and TRU Aseptics' followed Cold Star's instructions.

114. Pursuant to the Tolling Agreement, Cold Star was required to furnish TRU Aseptics with specifications outlining its formulas, and instructions for blending, batching, and packaging, among other specifications.

115. Among other things, Cold Star repeatedly failed to provide complete, accurate and suitable formulas that had been tested and confirmed reliable; Cold Star altered specifications for formulas without notice to TRU Aseptics; Cold Star failed to provide labels in a timely fashion, omitted essential ingredients from product labels; and Cold Star failed to provide accurate, complete, and suitable blending specifications in breach of its obligations under the Tolling Agreement, among other things.

116. In April 2018, TRU Aseptics began processing Cold Star's products in accordance with Cold Star's specifications.

117. From the outset, TRU Aseptic experienced issues with Cold Star's incomplete, inaccurate, unsuitable, and defective formulas, blending and batching instructions, and packaging specifications, which caused significant downtime at TRU Aseptics' plant resulting in lost revenues for TRU Aseptics.

118. On or about April 9, 2018, TRU Aseptics informed Cold Star about problems with the liquid cane sugar specifications Cold Star had provided to TRU Aseptics.

119. On or about May 2, 2018, TRU Aseptics informed Cold Star about problems with Cold Star's blend sheets.

120. On or about May 8, 2018, TRU Aseptics informed Cold Star about other problems with Cold Star's formulas.

121. On May 22, 2018, TRU Aseptics again informed Cold Star that TRU Aseptics was still experiencing issues with Cold Star's inaccurate, incomplete, unsuitable, and defective blending instructions causing significant downtime at TRU Aseptics' facility resulting in lost revenues for TRU Aseptics.

122. In addition to the problems with Cold Star's specifications for formulation, batching, and blending, TRU Aseptics continued to experience significant problems with the Rapak bags and IDC fitments, including, but not limited to, pinholes, no perforations between the bags, partial perforations between the bags, perforations that were too close to the inner-seam, fitments higher than the dust cap position, fitments not properly aligned, fitments installed in the wrong position, broken fitments, leaking fitments, incorrect spacing of fitments, and boxes of bags packed incorrectly with spout leading instead of spout trailing.

123. On or about April 19, 2018, TRU Aseptics informed Cold Star that the Rapak bags with the IDC fitment were defective and leaking.

124. Cold Star once again assured TRU Aseptics that it would address the defective bags with Rapak to ensure that Rapak delivered defect-free bags to TRU Aseptics in the future.

125. Cold Star instructed TRU Aseptics to continue processing its product according to the same problematic specifications, and with defective bags and defective, ill-fitting fitments.

126. On or about May 21, 2018, TRU Aseptics again informed Cold Star that it continued to experience significant problems using the Rapak bags with IDC fitments, and that the bags continued to be delivered to TRU Aseptics in a defective condition.

127. Cold Star failed to take any action to address or correct the significant issues that TRU Aseptics reported concerning the Rapak bags with IDC fitments, and instead demanded that TRU Aseptics continue to process Cold Star's products in accordance with the incomplete, inaccurate, unsuitable, and defective specifications directed by Cold Star.

128. After waiting a month for Cold Star to address the issues with Rapak, and being repeatedly instructed by Cold Star to continue processing its products using the defective packaging ordered by Cold Star, and delivered to TRU Aseptics by Rapak and IDC as the specified supplier for Cold Star, in an effort to resolve the problem, on or about May 24, 2018, TRU Aseptics informed Rapak directly about the problems that TRU Aseptics was experiencing with the Rapak bags and IDC fitments including but not limited to, pinholes, no perforations between the bags, partial perforations between the bags, perforations that were too close to the inner-seam, fitments higher than the dust cap position, fitments not properly aligned, fitments installed in the wrong position, broken fitments, leaking fitments, incorrect spacing of fitments, and boxes of bags packed incorrectly with spout leading instead of spout trailing.

129. On or about May 25, 2018, TRU Aseptics again contacted Rapak and Cold Star informing both companies that TRU Aseptics was continuing to experience significant downtime due to problems with the specified Rapak bags with IDC fitments.

130. TRU Aseptics further informed Rapak and Cold Star that the bags as supplied were packed incorrectly, which was deforming the fitments, causing significant problems with the filler machine's ability to feed the bags through the filling machine, and causing damage to the filler's grippers.

131. TRU Aseptics invited Rapak to visit TRU Aseptics' facility to view firsthand the issues TRU Aseptics was experiencing with the Rapak bags and IDC fitments.

132. On or about May 29, 2018, TRU Aseptics discovered bloated bags of Cold Star product that were on incubation hold in TRU Aseptics' facility.

133. On or about May 30, 2018, TRU Aseptics again informed Rapak and Cold Star that TRU Aseptics continued to experience issues with the specified Rapak bags with IDC fitments, resulting in significant downtime of the equipment, loss of product, and lost revenues to TRU Aseptic.

134. TRU Aseptics further advised both Rapak and Cold Star that as a result of the issues with the Rapak bags, the processed dairy products exhibited post-process contamination, including bloating and leaking.

135. TRU Aseptics' filler and processing parameters were within expected tolerances, and Cold Star's product had passed microbial hold, and as a result, TRU Aseptics reasonably concluded and advised Cold Star that the issues with Cold Star's end products were a direct result of the defective packaging provided by Rapak and IDC.

136. On or about May 31, 2018, Brent Todd from Rapak visited TRU Aseptics' plant and witnessed firsthand the significant issues TRU Aseptic was experiencing with Rapak's bags and IDC fitments while running Cold Star's products, including but not limited to, pinholes, no perforations between the bags, partial perforations between the bags, perforations that were too close to the inner-seam, fitments higher than the dust cap position, fitments not properly aligned, fitments installed in the wrong position, broken fitments, leaking fitments, incorrect spacing of fitments, and boxes of bags packed incorrectly with spout leading instead of spout trailing, among other things.

137. During his visit, Todd assured TRU Aseptics that he knew what was causing the perforation issues and that Rapak would correct it.

138. On or about June 13, 2018, a principal of Cold Star visited TRU Aseptics' plant and witnessed first-hand the significant issues TRU Aseptics was experiencing while running Cold Star's products using the Rapak bags with IDC fitments supplied by Cold Star.

139. After the visits by Rapak, and Harris, the Rapak bags with IDC fitments continued to arrive at TRU Aseptics' plant in a defective condition and TRU Aseptics continued to experience significant problems with them, but Cold Star continued to insist that TRU Aseptics continue to use the defective bags and fitments.

140. TRU Aseptics again communicated the issues it was experiencing with the Rapak bags and IDC fitments to Cold Star.

141. During this period of time, representatives of TRU Aseptics investigated potential alternative suppliers of bags and presented this information to Cold Star in hopes of resolving the continual issues with the packaging of Cold Star's products resulting from the defective Rapak bags and IDC fitments.

142. Despite being well aware of these significant packaging issues, and having total control of the relationship with Rapak and IDC, Cold Star continued pressing TRU Aseptics for Cold Star product using the Rapak bags and IDC fitments, instructing TRU Aseptics to continue processing its product using the defective Rapak bags and IDC fitments, and even requesting early release of its product, knowing that the Rapak bags and IDC fitments were not maintaining the sterility of the Cold Star products.

143. Having been notified of the concerns related to the quality with Cold Star's products caused by the defective specifications, Cold Star had a duty to stop further shipments of product until the problems were permanently and consistently resolved, but Cold Star refused to do so, and instead demanded early release of Cold Star's product.

144. During this time frame, Cold Star continued to provide TRU Aseptics with false and fraudulent assurances that the Rapak 5-liter bag and IDC fitment had been used successfully in Penn Yan, New York for low-acid aseptic processing of goods knowing that these representations were false.

145. Cold Star continued to represent to TRU Aseptics that the specifications it required TRU Aseptics to follow had been tested and shown to be reliable.

146. Cold Star did not disclose that it did not have complete, accurate, and suitable specifications, that it had never before used the combination of the Rapak bag and IDC fitment, and that it had not tested the viability of this combination for processing and packaging its low-acid aseptic dairy products before requiring TRU Aseptic to use them.

147. Based on instructions, assurances, and representations by Cold Star, along with Rapak and IDC, TRU Aseptics continued processing Cold Star's products in accordance with Cold

Star's specifications and FDA standards for low-acid aseptic products using the Rapak bags and IDC fitments as directed by Cold Star.

148. Between April and June 2018, TRU Aseptics ran similar low-acid aseptic products for other customers using different bags and fitments, not supplied by Rapak or IDC, and none of those customers reported quality issues, thus demonstrating that the issue with the Cold Star products was due to defective packaging, not the processing.

149. In or about August 2018, TRU Aseptics learned that it was the only company using the IDC fitment for low-acid aseptic processing in the United States despite Cold Star's representations to the contrary.

150. In or about August 2018, TRU Aseptics learned that despite Cold Star's representations to the contrary and Cold Star's knowledge that its representations were false, the Rapak 5-liter bag and IDC fitment had not been used successfully in Penn Yan, New York for low-acid aseptic processing of dairy products, and Cold Star in fact had not tested, and did not know, if the Rapak bag, or the IDC fitment, or the combination of the two, would meet quality standards, or maintain the sterility of Cold Star's processed dairy product.

151. Cold Star intentionally made these false representations and concealed material facts in order to induce TRU Aseptics to enter into the Tolling Agreement because it needed a new co-packer as soon as possible, and wanted to reduce costs of packaging its products.

152. Based on the above, Cold Star breached the Tolling Agreement and caused TRU Aseptics to incur significant damages including, but not limited to damage to its equipment, lost productivity due to plant and line shut downs, and wasted resources.

## CAUSES OF ACTION

### FIRST COUNT
**(Breach of Contract)**

153. TRU Aseptics repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

154. TRU Aseptics and Cold Star entered into the Tolling Agreement.

155. Cold Star materially breached the agreement between the parties by, among other things:

    a. failing to test the viability of the combination of the Rapak bag and IDC fitment before requiring TRU Aseptic to use it;

    b. requiring that TRU Aseptic continue to use the Rapak 5-liter bag and IDC fitment and failing to address the problems these supplies created in the processing of Cold Star's product;

    c. failing to source suitable packaging;

    d. failing to source suitable ingredients; and

    e. failing to provide TRU Aseptics with accurate, complete, and suitable processing specifications, including but not limited to, formulas, batching instructions, blending instructions, and packaging instructions.

156. As a direct and proximate result of these material breaches of the Tolling Agreement by Cold Star, TRU Aseptics has suffered, and will continue to suffer, harm in the form of monetary damages.

**WHEREFORE,** TRU Aseptics demands judgment against Cold Star for (i) compensatory, special, consequential, and incidental damages, plus interest; (ii) pre-judgment interest as allowed

by law; (iii) reasonable counsel fees and costs; and (iv) such further relief as the Court finds to be fair and just.

## <u>SECOND COUNT</u>
### (Breach of the Implied Covenants of Good Faith and Fair Dealing)

157. TRU Aseptics repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

158. TRU Aseptics and Cold Star entered into the Tolling Agreement.

159. Common law implies a covenant of good faith and fair dealing in all contracts.

160. Cold Star breached the implied covenant of good faith and fair dealing by, among other things:

   a. making fraudulent representations and concealing the truth about the use of the Rapak bag and IDC fitment with Cold Star's products;

   b. knowingly omitting material information about the packaging materials necessary to TRU Aseptics' ability to meet its obligations under the Tolling Agreement;

   c. continuously instructing TRU Aseptics to use the defective packaging; and

   d. knowingly omitting material information concerning the specifications and formulas necessary to process Cold Star's products.

161. As a direct and proximate result of these material breaches by Cold Star, TRU Aseptics has suffered, and will continue to suffer, harm in the form of monetary damages.

**WHEREFORE,** TRU Aseptics demands judgment against Cold Star for (i) compensatory, special, consequential, and incidental damages, plus interest; (ii) pre-judgment interest as allowed by law; (iii) reasonable counsel fees and costs; and (iv) such further relief as the Court finds to be fair and just.

162. TRU Aseptics repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

163. Cold Star intentionally and knowingly made false statements of material facts to TRU Aseptics prior to Cold Star and TRU Aseptics executing the Tolling Agreement including, but not limited to:

   a. that Cold Star would provide TRU Aseptics with accurate, complete, and suitable specifications to process Cold Star's products, and would provide training to TRU Aseptics' employees concerning Cold Star's specifications;

   b. that Cold Star had reliable specifications that could easily be adopted and implemented by TRU Aseptics;

   c. that the Rapak bag and IDC fitment were previously used at an aseptic processing plant in New York for low-acid aseptic processing without any issues or problems;

   d. that the Rapak bag and IDC fitment were fit for the intended purpose and would maintain the integrity of the aseptically processed Cold Star product; and

   e. that Cold Star would manage the suppliers of the bags and fitments to ensure the quality of the supplies and avoid disruption of TRU Aseptics processing of Cold Star's product.

164. Cold Star knew that these facts were false and fraudulent at the time that they were represented to Defendant TRU Aseptics.

165. Cold Star omitted material facts including, but not limited to:

   a. that it did not have complete, accurate, and suitable specifications;

b.  that it had never before used the combination of the Rapak bag and IDC fitment; and

c.  that it had not tested the viability of this combination for processing and packaging its low-acid aseptic dairy products before requiring TRU Aseptic to use them.

166. Cold Star knew these facts were material to TRU Aseptics' decision to enter into a business relationship with Cold Star.

167. Cold Star intentionally made these false and fraudulent statements, and concealed other material facts, to induce TRU Aseptics to, among other things, enter into the Tolling Agreement with Cold Star.

168. TRU Aseptics reasonably, justifiably, and detrimentally relied on these false and fraudulent representations, and acts of concealment, in, among other things, entering into the Tolling Agreement with Cold Star.

169. Had the truth about these material facts been accurately disclosed and represented, TRU Aseptics would not have, among other things, entered into the Tolling Agreement with Cold Star, and would not have continued to process Cold Star's products in the face of significant problems with the inaccurate, incomplete, unsuitable, and defective specifications provided by Cold Star

170. As a direct and proximate result of Cold Star's intentional and deliberate acts, TRU Aseptics has suffered, and will continue to suffer, significant damages.

**WHEREFORE,** TRU Aseptics demands judgment against Cold Star for (i) compensatory, special, consequential, and incidental damages, plus interest; (ii) punitive damages; (iii) pre-

judgment interest as allowed by law; (iv) reasonable counsel fees and costs; and (v) such further relief as the Court finds to be fair and just.

**FOURTH COUNT**
**(Negligent Misrepresentation)**

171.    TRU Aseptics repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

172.    As set forth above, Cold Star made numerous incorrect misrepresentations of material facts to TRU Aseptics including, but not limited to:

a.   that Cold Star would provide accurate, complete, and suitable specifications to TRU Aseptics and would train TRU Aseptics' employees to comply with these specifications;

b.   that Cold Star had tested and confirmed the formulation and packaging process that it directed TRU Aseptics to use;

c.   that the Rapak bag and IDC fitment were previously used at an aseptic processing plant in New York for low-acid aseptic processing without any issues or problems;

d.   that the Rapak bag and IDC fitment were fit for the intended purpose and would maintain the integrity of Cold Star's aseptically processed product; and

e.   that Cold Star would manage the suppliers of the bags and fitments to ensure the quality of the supplies and avoid disruption of TRU Aseptics processing of Cold Star's product.

173.    Cold Star also negligently failed to disclose that it did not have complete, accurate, and suitable specifications, that it had never before used the combination of the Rapak bag and

IDC fitment, and that it had not tested the viability of this combination for processing and packaging its low-acid aseptic dairy products before requiring TRU Aseptic to use them.

174. Cold Star negligently made these misrepresentations of material fact and omissions to TRU Aseptics, without knowledge of whether they were true or false at the time they were made.

175. TRU Aseptics reasonably, justifiably, and detrimentally relied on Cold Star's misrepresentations and omissions of material facts.

176. As a direct and proximate result of Cold Star's misrepresentations and omissions, TRU Aseptics has suffered, and will continue to suffer, significant damages.

**WHEREFORE,** TRU Aseptics demands judgment against Cold Star for (i) compensatory, special, consequential, and incidental damages, plus interest; (ii) pre-judgment interest as allowed by law; (iii) reasonable counsel fees and costs; and (iv) such further relief as the Court finds to be fair and just.

**FIFTH COUNT**
**(Common Law Fraud)**

177. TRU Aseptics repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

178. Cold Star made material misrepresentations to TRU Aseptics including, but not limited to:

    a. that Cold Star would provide complete, accurate, and suitable specifications to TRU Aseptic to follow in processing and packaging its products and that Cold Star would train TRU Aseptics' employees in these processes;

    b. that Cold Star had tested the formulation and packaging and confirmed its viability;

33

c. that other co-packers had successfully used the combination of the Rapak bag and the IDC fitment in low-aseptic processing of dairy;

d. that the Rapak bag and IDC fitment were fit for the intended purpose and would maintain the integrity of Cold Star's aseptically processed product; and

e. that Cold Star would manage the suppliers of the bags and fitments to ensure the quality of the supplies and avoid disruption of TRU Aseptics processing of Cold Star's product.

179. These representations were false.

180. These representations were material to TRU Aseptics' decision to enter into the Tolling Agreement with Cold Star.

181. These representations were material to TRU Aseptics' decision to continue processing Cold Star's products according to the Cold Star's problematic specifications and with defective bags and fitments.

182. Cold Star knew these statements were false, or were made without knowledge of their truth.

183. In furtherance of the fraud, Cold Star omitted material facts including, but not limited to:

a. that it did not have complete, accurate, and suitable specifications;

b. that it had never before used the combination of the Rapak bag and IDC fitment; and

c. that it had not tested the viability of this combination for processing and packaging its low-acid aseptic dairy products before requiring TRU Aseptic to use them.

184. Cold Star intended that TRU Aseptics would rely upon these representations so that TRU Aseptics would process Cold Star's product because Cold Star was in urgent need of product for its customers and did not have another low-acid co-packer.

185. TRU Aseptics was not aware that these statements were false, and had no reasonable way to discover the material omissions of fact that Cold Star failed to disclose.

186. TRU Aseptics relied upon these representations, and material omissions, which led TRU Aseptics to continue processing Cold Star's products according to Cold Star's problematic specifications and with defective bags and defective, ill-fitting fitments.

187. TRU Aseptics had a right to rely upon the representations made by Cold Star, and had no way of knowing they were false.

188. TRU Aseptics suffered injury as a result of Cold Star's intentional misrepresentations, and material omissions, including economic losses.

189. TRU Aseptics reasonably, justifiably, and detrimentally relied on these false and fraudulent representations, and acts of concealment, in, among other things, processing Cold Star's products according to the Cold Star's problematic specifications and with defective bags and defective, ill-fitting fitments.

190. Had the truth about these material facts and omissions been accurately disclosed and represented, TRU Aseptics would not have, among other things, entered into the Tolling Agreement and continued processing Cold Star's products according to the Cold Star's problematic specifications and with defective bags and defective, ill-fitting fitments.

191. As a direct and proximate result of Cold Star's intentional and deliberate acts, TRU Aseptics has suffered, and will continue to suffer, significant damages.

**WHEREFORE,** TRU Aseptics demands judgment against Cold Star for (i) compensatory, special, consequential, and incidental damages, plus interest; (ii) pre-judgment interest as allowed by law; (iii) reasonable counsel fees and costs; and (iv) such further relief as the Court finds to be fair and just.

## SIXTH COUNT
### (Equitable Estoppel)

192. TRU Aseptics repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

193. Cold Star explicitly represented to TRU Aseptics, among other things:

   a. that Cold Star would provide accurate, complete, and suitable specifications for processing and packaging its products, and would train TRU Aseptics' employees to comply with these specifications;

   b. that Cold Star had tested the formulation and packaging processes to confirm their suitability for processing of Cold Star's products by TRU Aseptics;

   c. that the Rapak bag and IDC fitment were previously used at an aseptic processing plant in New York for low-acid aseptic processing without any issues or problems;

   d. that the Rapak bag and IDC fitment were fit for the intended purpose and would maintain the integrity of Cold Star's aseptically processed product; and

   e. that Cold Star would manage the suppliers of the bags and fitments to ensure the quality of the supplies and avoid disruption of TRU Aseptics processing of Cold Star's product.

194. Cold Star made these representations for the purpose of convincing TRU Aseptics to invest substantial resources in equipment and reconfigure its plant to process low-acid aseptic

products, to continue to process Cold Star's products in spite of the difficulties and expenses borne by TRU Aseptics, and to forego opportunities to process products for other customers.

195. TRU Aseptics acted in reliance upon Cold Star's representations by investing substantial resources in equipment and reconfiguring its plant to process Cold Star's products, continuing to process Cold Star's products in spite of the difficulties and expenses borne by TRU Aseptics, and foregoing opportunities to process products for other customers.

196. TRU Aseptics reasonably relied on Cold Star's representations to its detriment because TRU Aseptics did not recoup its investment of substantial resources and TRU Aseptics' business was damaged as a result of its reliance upon Cold Star's representations.

**WHEREFORE,** TRU Aseptics demands judgment against Cold Star for (i) compensatory, special, consequential, and incidental damages, plus interest; (ii) punitive damages; (iii) pre-judgment interest as allowed by law; (iv) reasonable counsel fees and costs; and (v) such further relief as the Court finds to be fair and just.

<u>**JURY DEMAND**</u>

Defendant TRU Aseptics demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Ralph J. Marra, Jr.
CALCAGNI & KANEFSKY, LLP
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
*Counsel for Defendant, TRU Aseptics, LLC*

And

/s/ Sandra J. Wunderlich (*pro hac vice*)
TUCKER ELLIS LLP
100 South 4th Street, Suite 600
St. Louis, Missouri 63102

*Co-Counsel for Defendant, TRU Aseptics, LLC*

/s/ Robert J. Hanna (*pro hac vice)*
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
*Co-Counsel for Defendant, TRU Aseptics, LLC*

Dated:  June 3, 2020

# CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2020, I caused the foregoing Answer, Defenses, Demand for Jury Trial, and Counterclaims to be served via the Court's CM/ECF system on all counsel of record.

/s/ Ralph J. Marra, Jr.

Dated: June 3, 2020